UNITED STATES of America, Appellee,

v.

Kurt Robert RISNES, Appellant.

No. 89–5598MN.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1990.

Decided Aug. 29, 1990.

Scott F. Tilsen, Minneapolis, Minn., for appellant.

Thorwald H. Anderson, Jr., Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON, and MAGILL, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

MAGILL, Circuit Judge.

Kurt Robert Risnes appeals his conviction for conspiracy to counterfeit obligations of the United States in violation of 18 U.S.C. § 371, and aiding and abetting the possession of counterfeit devices in violation of 18 U.S.C. §§ 2 and 474. Risnes alleges that the district court[1] (1) abused its discretion in denying his motion for a mistrial based on the prosecutor's remarks bolstering the credibility of a key prosecution witness during closing argument; (2) erred in denying his motion to suppress inculpatory statements; and (3) abused its discretion in limiting cross-examination. We affirm.

## I.

On December 4, 1987, Risnes and Steven Korn[2] demonstrated and discussed a counterfeiting process with Michael Fritze at their trailer home at 3808 Patriot Lane in Lexington, Minnesota. Risnes and Korn produced two twenty-dollar federal reserve notes using a copy machine. Fritze kept two counterfeit notes.

On December 5, 1987, Fritze discovered a counterfeit twenty-dollar note, with the same serial number as the two notes he had obtained from the Risnes/Korn trailer the previous day, among the cash receipts at the gas station where he worked. Fritze contacted the Anoka County police. Police officers and Secret Service Agent John Berglund responded. Fritze told Berglund that Risnes and Korn were counterfeiting twenty-dollar notes, detailed his observations from the previous day, and turned over the two notes he had taken from the Risnes/Korn trailer home. That evening, agents executed a search warrant at the Risnes/Korn trailer home and discovered a three-color process copier with green, red and black ink in the machine, silk-screening equipment, bond paper, copier and service contracts (signed by Risnes), and a masking template with Risnes' palm print on it. After the search warrant was executed, Risnes turned himself in to Anoka County authorities. He was informed of his *Miranda* rights during an interview with a secret service agent. When he indicated his desire to have an attorney present, the questioning ceased. Risnes was immediately released.

On April 18, 1989, Risnes was arrested by local police officers based on a warrant issued pursuant to a nine-count grand jury indictment stemming from the late 1987 incidents. He was held at the Crow Wing County Jail in Brainerd, Minnesota pending transfer to federal custody. On May 9, 1989, Risnes was released to the custody of two secret service agents and escorted to Minneapolis by car to be held in federal custody pending trial.

On May 23, 1989, a pretrial hearing was held before a magistrate,[3] at which time Risnes moved to suppress inculpatory statements made to the secret service agents during the car trip. The district court adopted the magistrate's report and recommendation and denied Risnes' motion.

On August 17, 1989, the jury returned a verdict of guilty on conspiracy to counterfeit obligations of the United States (count I) and aiding and abetting the possession of counterfeit devices (count III). On November 29, 1989, Risnes was sentenced to eighteen months imprisonment and two years supervised release. Risnes was ordered to pay restitution ($320) plus $100 in special assessments. Risnes appeals his conviction.

---

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

2. Steven Korn was originally a defendant in this case but pleaded guilty.

3. The Honorable Floyd E. Boline, United States Magistrate for the District of Minnesota.

## II.

### A.

■ When Risnes was transferred to federal custody, he was given *Miranda* warnings and indicated that he understood them. After conversing with the agents in the car about fishing and hunting, Risnes asked why he had been arrested. The agents told him the charge in the indictment was counterfeiting. Risnes then asked the agents what the largest counterfeiting case that they were aware of entailed. They responded it had involved $1,000,000. Risnes then stated that he did not intend to make $1,000,000 and had just fallen into the "rinky-dink" scheme underlying the charge.

Risnes argues these were inculpatory statements he made to secret service agents during transportation to a federal detention facility. Risnes argues that the statements were involuntary and were obtained in violation of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), which forbids custodial interrogation of a suspect who has requested that counsel be present. The government argues in response that *Edwards* is not implicated: Risnes was read *Miranda* warnings and initiated the conversation with agents, and the statements constituted a knowing and intelligent waiver of his right to remain silent. We review the district court's findings in support of the denial of Risnes' motion to suppress under a clearly erroneous standard. *See United States v. Jorgensen*, 871 F.2d 725, 728 (8th Cir.1989).

In *Edwards*, 451 U.S. at 485, 101 S.Ct. at 1885 (1981), the Supreme Court held that once a suspect has invoked his right to counsel during custodial interrogation, questioning must cease until counsel is provided or the suspect initiates further conversation. In the instant case, Risnes initiated the conversation with the agents regarding counterfeiting and his case in particular, after invoking his right to have counsel present at his initial interview. In so doing, Risnes effected a knowing and intelligent waiver of the right to have counsel present. Therefore, the facts of this case fall within the recognized exception to

the inadmissibility of statements made after a suspect's invocation of the right to have counsel present. *See id.*

The district court found that Risnes had been fully advised of his *Miranda* rights, knowingly and intelligently waived his rights, and made the statements freely and voluntarily. The district court considered the totality of the circumstances in reaching these conclusions. We do not believe the findings of the district court are clearly erroneous. Therefore, we hold the district court did not err in denying Risnes' motion to suppress the statements.

### B.

Next, Risnes argues that the district court abused its discretion in limiting his cross-examination of Agent Berglund, one of the officers who escorted Risnes from Brainerd to Minneapolis, regarding Risnes' physical and psychological conditions at the time he made the inculpatory statements. The district court viewed this line of questioning as irrelevant and sustained the government's objections.

■ Reasonable limitations on cross-examination based on marginal relevance do not offend the confrontation clause. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). We must give substantial deference to a district court's rulings limiting the scope of cross-examination. *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985). A ruling will be reversed by this court only upon a clear showing of abuse of discretion. *Harris v. Mallinckrodt, Inc.*, 886 F.2d 170 (8th Cir. 1989).

■ In the instant case, defense counsel asked Berglund on cross-examination how long the drive had been. Tr. at 95. The government's objection to this inquiry was sustained. Defense counsel then asked Agent Berglund if he knew (1) how long Risnes had been in the Crow Wing County Jail; (2) if Risnes had been fed; and (3) if Risnes had slept. Tr. at 95–96. The district court sustained the government's ob-

jections to this line of questioning as irrelevant.

Evidence regarding the circumstances surrounding the making of inculpatory statements would have been relevant to the district court's determination of the voluntariness of the statements. However, such evidence would have had very little probative value with regard to the truthfulness or credibility of the inculpatory statements compared with the potential for prejudicial effect with the admission of evidence which might also be used to determine voluntariness. Therefore, we do not believe the district court abused its broad discretion in excluding such evidence.

## C.

Finally, Risnes argues that he did not receive a fair trial because the prosecutor's remarks during closing argument served to bolster the credibility of the government's key witness, Fritze, by referring to facts not in evidence. Risnes contends the district court erred in not granting a mistrial. The government argues that since there were facts in evidence which supported the comments made by the prosecutor urging a conclusion on the issue of credibility, the prosecutor's remarks were neither unduly prejudicial nor so offensive that Risnes was deprived of a fair trial.

■ The trial court has broad discretion in controlling the scope of closing arguments. *United States v. Bell*, 651 F.2d 1255, 1260 (8th Cir.1981). We review the trial court's decisions regarding the propriety of a prosecutor's remarks under an abuse of discretion standard. *Id.* The question for us to consider is whether the argument was " 'so offensive as to deprive the defendant of a fair trial.' " *United States v. Segal*, 649 F.2d 599, 604 (8th Cir.1981) (quoting *U.S. v. Bohr*, 581 F.2d 1294, 1301 (8th Cir.1978)). The facts of each case will determine whether a comment was " 'unduly prejudicial' " or " 'plainly unwarranted and clearly injurious.' " *Id.* (quoting *United States v. Splain*, 545 F.2d 1131, 1135 (8th Cir.1976)).

■ " 'The role of the attorney in closing argument is to assist the jury in analyzing, evaluating and applying the evidence.' " *Id.* (quoting *United States v. Garza*, 608 F.2d 659, 662 (5th Cir.1979) (citations omitted)). Arguments transcending these boundaries are improper. Therefore, a prosecutor may not express an opinion on the credibility of a witness unless the opinion is based on the evidence in the case. *Id.* (citing *United States v. Garza*, 608 F.2d 659, 663 (5th Cir.1979)).

■ During closing argument at trial, the prosecutor stated:

So Mr. Fritze came clean when he was subpoenaed and came up here. We met with him on Sunday, and he knew that he would be testifying under oath on the stand, and he said I want to tell you the truth. I want to tell you what I saw.

Tr. at 204. Defense counsel objected on the ground that the remarks referred to events not in evidence. The district court cautioned the prosecutor and later instructed the jury that lawyers' comments are not evidence.

We have reviewed the prosecutor's statement, and find no reversible error, because we read the statement to urge a conclusion regarding Fritze's credibility based on facts in evidence. Fritze admitted that he had lied in an effort to place more blame on Risnes. Tr. at 18. Extensive questioning regarding bias ensued. Fritze testified on cross-examination that he had a change of heart and decided to tell the truth when he came to Minneapolis on Sunday. Tr. at 19. Fritze also testified that he was interviewed on the Sunday before testifying. Tr. at 28. Because an attorney may urge a conclusion based on the evidence, the prosecutor's remark was not improper. *See United States v. Felix*, 867 F.2d 1068 (8th Cir.1989). In addition, the district court instructed the jury that "[s]tatements and arguments of counsel are not evidence." Instruction No. 8, D.R. at 40. The remarks viewed in light of the strength of the evidence of guilt were not unduly prejudicial or plainly unwarranted and clearly injurious. *See United States v. Young*, 634 F.2d 1136, 1139 (8th Cir.1980). Therefore, the

district court did not abuse its discretion in permitting the remarks.

However, we feel compelled to admonish the government to observe the highest standard of fairness in argument. Issues on credibility determinations are entrusted to the jury. Counsel's argument, if not based on evidence, would have been improper. Even considering the underlying evidence, we find it very close to the outer perimeters of permissibility.

### III.

For the foregoing reasons, we hold the district court did not err in denying Risnes' motions to suppress and for a mistrial. Finding no reversible error, we affirm Risnes' conviction.